BRADLEY, MERRIAM & SMITH, Appellants, v. JOHN GOETSCHE, Appellee.

**Appeal:** MATHEMATICAL ERROR: CORRECTION. A mere mathematical 1 error in calculating the amount of a judgment can be cured on appeal by ordering a remittitur.

**Contracts:** PLEADINGS: EVIDENCE. Where the cause of action as 2 pleaded was based upon a written contract to sell goods on commission, admission of evidence of a subsequent oral agreement of a different character was reversible error.

*Appeal from Harrison District Court.*—HON. E. B. WOODRUFF, Judge.

FRIDAY, DECEMBER 13, 1912.

ACTION to recover for merchandise sold and delivered. Defendant admitted the receipt of part of the goods, but denied that he received other items charged against him. He also pleaded a settlement and counterclaim. On the issues joined the case was tried to a jury, resulting in a verdict for the defendant in the sum of $114.32. Plaintiff appeals.—*Reversed.*

*H. H. Roadifer,* for appellant.

*No appearance for appellee.*

DEEMER, J.—By written contract plaintiff appointed defendant its agent for the handling of agricultural implements, etc., in the town of Magnolia. By the terms of that agreement defendant was to account for all sales made by him to plaintiff, settling either by cash or notes. We here quote from the contract as follows:

In consideration of the within special commissions, party of the second part agrees to sell for cash not less than one-third of all the goods sold.

All purchasers' notes to be indorsed and payments guaranteed at maturity by said party of the second part, and protest demand and notice of nonpayment waived. A full report of sales and settlements made from time to time by, party of the first part shall be forwarded to party of the second part the 1st and 15th of each and every month.

This mode of settlement shall be effective on the respective goods until the following dates: Implements, June 1, 1910; wagons, June 1, 1910; vehicles, June 1, 1910; no additional commission after June 1, 1910.

Any and all goods of every kind, nature and description on hand and in possession of party of the second part at the last-mentioned dates are subject to reshipment on order of party of the first part. If party of the first part does not decide to reship within ten days thereafter, then it is agreed that party of the second part becomes the purchaser thereof, and said party of the second part agrees to purchase, pay and settle for same in cash with interest at 8 per cent from date, at option of party, of first part, or if party of first part so elects, said goods on hand at that time shall remain in possession of party of the second part on the basis of this agreement, subject to settlement provided for herein as sales are made only. It is fully understood and acknowledged that the title to and ownership of any and all goods shipped on the basis of this contract shall remain absolute in party of the first part, and the title and ownership shall not pass from party of the first part to party of the second part until full and final settlement has been made between said first and second parties.

All goods shipped by party of the first part to party of the second part during the life of this contract are subject to removal and reshipment without further notice.

In consideration of party of the first part carrying said stock of goods subject to sale, and at the expense of interest for value and special terms given, party of the second part agrees to be fully responsible for all damage or loss by fire or otherwise, to any and all goods shipped under this contract. Party of the second part agrees to pay all taxes and insurance on any and all goods shipped under the terms of this contract.

No settlements made under the terms of this contract are binding on party of the first part until same has been accepted and indorsed at their office in Council Bluffs, Iowa. . . .

This contract shall remain in force and effect until full and final settlement is made between party of the first part and party of the second part.

No agreement or conditions, verbal or otherwise, save those mentioned herein shall be considered in any respect except by written notices duly acknowledged and signed by both parties of the first part and second part. . . .

It is understood and agreed between the parties hereto, provision two, conditions of sale:

That no allowance will be made for breakage unless they occur from manifest defects in material. Breakages thus caused during the first season's use of the machine will be made good by new parts, which will be charged when sent, and corresponding credit will be made only on return of defective parts to factory. Purchaser agrees to pay transportation charges on parts furnished under this provision.

According to the testimony the jury might well have found for plaintiff on items agreed upon by the parties in the sum of about $110. As a matter of fact it found for defendant in the sum already stated, thus indicating that it disallowed plaintiff's claim entirely and found for defendant on both items of counterclaim. These items were first 5 per cent. commission on cash sales amounting to $764.96, or as he claims $43.44; and to be exact we quote the second count of the counterclaim, which reads as follows:

That this defendant entered into the contract referred to herein, and during the years 1909 and 1910 received from the plaintiff goods, consisting of manure spreaders, agricultural implements, and machinery thereunder. That by reason of faulty construction of said manure spreaders, agricultural implements, and machinery, both as to defective materials and workmanship, this defendant has been compelled to expend large sums of money and devote a great amount of time in furnishing new materials and making repairs to the broken and defective parts of said manure spreaders and machinery, amounting in the aggregate sum of $70.88, items of which are set out in Exhibit E hereto attached as a part hereof. That the prices charged and value fixed for such labor and materials and money expended are reasonable prices and values. That the same have long since been due the defendant, but no part of which has ever been paid.

The total amount for which defendant asked judgment was $114.32. The trial court gave the following instructions with reference to these items of counterclaim:

(13) The defendant, in addition to his claim that he does not owe the plaintiff on their account, sets up two counterclaims. In count 1 of his counterclaim he says that at the time of the settlement on December 28, 1909, defendant had on hand agricultural implements in about the value of $764.96, and by the terms of the contract with plaintiff he was entitled to 5 per cent commission on all cash sales, and that he made sales of said implements and made remittance thereof, either by cash or by notes which were accepted as cash, and that there is now due him as commission on said sales $43.44, no part of which has been paid him and for which he now asks judgment. The burden is upon the defendant on this counterclaim to show by a preponderance of the evidence relating thereto that he is entitled to a commission of 5 per cent on said sales, and, if he has failed to show that he is entitled to such commission, you should allow him nothing on this claim, otherwise you should allow him such sum as the evidence shows he is entitled to, if anything.

(14) The defendant for a further counterclaim says that he received goods from the plaintiff that were faulty in construction and defective in material and workmanship, and that under a parol agreement with the plaintiff, through its Mr. Merriam, he was directed to repair such implements and machinery for which he was to receive a reasonable compensation. He alleges that he performed services and furnished material in the reasonable sum of $70.88 in the following items: (Here follows list of items amounting to $70.88.)

(15) As bearing upon the right of defendant to perform such labor and furnish repairs, you should consider for what length of time he was performing such services, if any, and what knowledge, if any, the agents of plaintiff had that defendant was making a claim to compensate for such services, and you should consider such evidence so far as it may throw light upon the question whether the defendant made such a contract with the said Merriam and whether the said Merriam had authority from plaintiffs to make such contracts, and from all the evidence before you it is for you to determine whether defendant is entitled to recover on this counterclaim at all, and, if he is entitled to a recovery, the amount thereof.

Under these instructions the jury evidently allowed the exact amount of defendant's two items of counterclaim, to wit, $114.32.   It is manifest that the trial court was led into two errors:

First.   Five per cent. commission on $764.96 is not $43.44, but $38.24.   If this were the only error, we might correct it by ordering a remittitur for the difference.   But this is not the only trouble in the case.

The second count of the counterclaim is distinctly bottomed upon the written contract of the parties, yet the trial court, over objection, permitted defendant to prove a subsequent oral agreement with one Merriam, a representative of plaintiff, whereby plaintiff was to pay defendant for his services and material furnished in making repairs and gave the instruction which we have quoted.   This was entirely outside the issues made by the pleadings, and the trial court erred in receiving the testimony, and in giving the instruction which we have quoted.   Again, there was no testimony showing the value of defendant's time or services, and no showing as to the value of some of the articles claimed to have been furnished by him.

For the errors pointed out, the judgment must be, and it is, *Reversed.*